## IN THE SUPERIOR COURT OF GUAM

TINA T. VALDEZ,

Plaintiff,

vs.

MARCIANO V. PANGILINAN,

Defendant.

CIVIL CASE NO. CV0362-22

**DECISION AND ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Court here addresses the Motion for Partial Summary Judgment filed by Plaintiff Tina T. Valdez. The Court determines there are issues of fact as to whether Defendant Marciano V. Pangelinan committed battery and assault upon Valdez. The Motion is therefore DENIED.

## I. UNDISPUTED FACTS

Based on the record before the Court, the Court finds the following facts to be undisputed:

1. From 2015 to 2021, Pangilinan employed Valdez to assist his wife and then himself after his wife passed away. Pl.'s Decl. Counsel, Ex. D at 14, 17 (June 15, 2023).

2. Valdez alleges that from 2019 to 2021, Pangilinan committed assault and battery against her. Specifically, on at least fifteen occasions, Pangilinan inappropriately touched her and/or solicited her to have a sexual relationship, which she refused. *See* Compl. ¶¶ 23-40 (June 21, 2022); Decl. Tina Valdez (June 15, 2023); Submission (Aug. 17, 2023).

3. At the time of the alleged acts, Pangilinan was over 90 years old. Pl.'s Decl. Counsel, Ex. A.

4. Pangilinan denies these allegations because he "is without adequate recollection,

ORIGINAL

knowledge or information sufficient to form a belief as to the truth of the allegations due to his medical condition and diagnosis of dementia and Alzheimer's disease and/or because Mr. Pangilinan states that the allegations are untrue." Pl.'s Decl. Counsel, Ex. D at 18.

5. Pangelinan's attorneys and guardian (also referred to herein as his "agents") concede Valdez did not consent to any sexual or romantic contacts. *See* Minute Entry at 10:00:50 (Aug. 17, 2023) (Pangilinan's counsel concedes lack of facts showing consent from Valdez).

6. Valdez recorded conversations between herself and Pangilinan on four occasions, during which they discussed Pangilinan wanting to have a sexual relationship with her. Submission, Exs. A-D. For example, in the recorded conversation on May 6, 2019, Pangilinan informs Valdez that he wants to have a relationship with her. Submission, Ex. A. Because she disagrees, he asks her to find new employment. *Id.* In the recorded conversation on August 5, 2019, Pangilinan told Valdez, "I still would like to make love with you." Submission, Ex. C. She continued to resist: "It's not going to happen." *Id.* Finally, in the recorded conversation occurring on September 10, 2019, Pangilinan tells Valdez that his body is "normal including my desire to have sex . . . ." Submission, Ex. D.

7. None of the four video recordings show Pangilinan physically contacting Valdez.

8. Dr. Vincent Akimoto treated Pangilinan from 2011 to at least 2022. In an October 31, 2022 letter, Dr. Akimoto stated that "it is my opinion that Mr. Pangilinan suffers from mental impairments indicating dementia and Alzheimer disease. I have witnessed Mr. Pangilinan's loss of memory throughout my years as his treating physician. " Pl.'s Decl. Counsel, Ex. A, Ex. C.

ORIGINAL

9. On November 2, 2022, Dr. Ramel Carlos, a neurologist, stated in a letter that Pangilinan "has been diagnosed with moderate to severe degree of dementia, specifically Alzheimer disease." Pl.'s Decl. Counsel, Ex. A, Ex. A. Dr. Carlos' letter was drafted at the request of Pangilinan's family. *Id.*

10. In 2022, the Superior Court of Guam placed Pangilinan under a guardianship after finding him incompetent.[1] Pl.'s Decl. Counsel, Ex. B. John T. Pangilinan, Pangilinan's son, serves as his guardian.

11. During the discovery phase of this case, Valdez posed interrogatories to Pangilinan. John responded that "Due to Pangilinan's Alzheimer's disease and dementia, his capacity to respond to these Interrogatories have been affected . . . . The responses to these Interrogatories are made according to John T. Pangilinan's best personal knowledge and understanding of the facts." *See generally* Pl.'s Decl. Counsel, Ex. D.

12. In response to an Interrogatory about whether Pangilinan had communicated with any other person about Valdez's allegations, John responded, no. Pl.'s Decl. Counsel, Ex. D at 23.

13. Pangilinan's agents procured a protection order against the taking of his deposition due to his "physical and mental ailments" and the "unnecessary risk to Defendant's health and life." Order Granting Ex Parte Unopposed Mot. Prot. Order (May 5, 2023). This Order states: "The Court has reviewed the Motion and finds that the Motion shall be granted to protect the health of the Defendant. Good cause has been provided to the Court that Defendant is

---

[1] Valdez was not involved in the guardianship proceeding. Her counsel states that he did not receive notice of the guardianship petition. Minute Entry at 9:34:15.

ORIGINAL

an elderly man and suffers from physical and mental ailments, and that subjecting Defendant to be deposed would create unnecessary risk to Defendant's health and life. The deposition is therefore an undue burden upon the Defendant and justifies quashing the deposition and this protective order."

14.     Valdez contends that the protective order prevents Pangilinan from testifying at trial.

15.     Pangilinan has not designated any medical experts for trial.

16.     Valdez has four claims against Pangilinan: assault, sexual battery, wrongful termination, and intentional infliction of emotional distress. She seeks partial summary judgment on the claims for assault and sexual battery.

## II.     SUMMARY JUDGMENT

### A.     STANDARD FOR SUMMARY JUDGMENT MOTIONS

The Court may grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. GRCP 56(a). "Stated simply, there is a trial issue if there is sufficient evidence for a jury to return a verdict in the non-moving party's favor." *Kim v. Hong*, 1997 Guam 11 ¶ 8 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

All reasonable inferences must be drawn in the opposing party's favor both where the underlying facts are undisputed (e.g., background or contextual matters) and where they are in controversy. *Ukau v. Wang*, 2016 Guam 26 ¶ 73. At the summary judgment stage, the nonmovant's version of any disputed issue of fact is presumed correct. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456 (1992).

ORIGINAL

## B.   BATTERY

Both parties rely on the definition of battery in section 18(1) of the Restatement

(Second) of Torts:

> An actor is subject to liability to another for battery if
>
> (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
>
> (b) an offensive contact with the person of the other directly or indirectly results.

In none of the four videos recorded by Valdez does Pangilinan ever make physical

contact with Valdez, either directly or indirectly, by using an object to contact her.  Even though

Valdez claims that Pangilinan made direct offensive contact numerous other times, the Court

finds that the videos introduce an issue of fact as to whether such direct or even indirect contact

occurred.  For that reason, summary judgment on the claim for battery must be denied.

## C.   ASSAULT

The Restatement also defines assault:

> (1) An actor is subject to liability to another for assault if
>
> (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
>
> (b) the other is thereby put in such imminent apprehension.
>
> (2) An action which is not done with the intention stated in Subsection (1, a) does not make the actor liable to the other for an apprehension caused thereby although the act involves an unreasonable risk of causing it and, therefore, would be negligent or reckless if the risk threatened bodily harm.

Restatement (Second) of Torts § 21 (1965).

Unlike battery, assault does not mandate that contact occurred. Assault, instead, focuses on intent.[2] On this point, Pangilinan's agents explain that the undisputed facts, when construed in his favor, indicate his willingness to have a consensual relationship. "It is also undisputed that Mr. Pangilinan wanted to have a relationship with Tina, and that he even discussed her willingness to have sex with him." Opp. at 3 (July 13, 2013). However, he "did not inten[d] to do any act that would place Tina in a state of apprehension of harmful contact or actually cause harmful contact to Tina." *Id.* at 10. Valdez responds that her allegations are and shall remain undisputed because Pangilinan would not be able to testify otherwise and no other person witnessed Pangilinan's encounters with her. Pangilinan counters that the Court cannot accept Valdez's declaration about the fifteen incidents because it is self-serving.

### 1.     Valdez's burden as a movant.

Pangilinan's argument against accepting Valdez's declaration calls into question what type of evidence is appropriate for a movant to present in a summary judgment motion. Pangilinan claims that *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), permits this Court to disregard Valdez's declaration entirely as a self-serving submission. *Reeves* concerns a motion for judgment notwithstanding the verdict brought under Federal Rule of Civil Procedure 50. The particular issue before the United States Supreme Court in *Reeves* was "the kind and amount of evidence necessary to sustain a jury's verdict that an employer unlawfully discriminated on the basis of age." *Id.* at 137. Pangilinan urges that the "*Reeves* standard applies to summary judgment analysis because the standards under Rule 50 and Rule 56 are equivalent."

---

[2] *See Brown v. Diversified Hospitality Group Inc.*, 600 So.2d 902, 906 (La. Ct. App. 1992) ("Battery is harmful or offensive contact with a person . . . . An assault is a threat of such a harmful or offensive contact.").

Opp. at 5 n.1. Indeed, *Reeves* states, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law . . . ." *Id.* at 150-51 (internal citations omitted).

Notably, Pangilinan cites no other case—federal or local—that applies *Reeves* to summary judgment motions. This court has found at least one federal case declining to extend *Reeves* to summary judgment motions. In *Gazdick v. Solis*, 2013 WL 1909576, at *9 (M.D. Pa.), the federal district court, citing the above excerpt, demonstrated *Reeves'* practical inapplicability to summary judgment:

> Under Plaintiff's argument, the Court cannot consider *any* statements from interested witnesses when evaluating a motion for summary judgment. Taking this argument to its logical conclusion, a court could never consider a defendant's deposition or affidavit because he is an interested party, rendering discovery of a defendant's testimony useless for summary judgment purposes. This takes *Reeves* too far . . . .

*Id.*

The Court agrees with *Gazdick*. Valdez's declaration is neither self-serving nor filed in support of a Rule 50 motion, but a required piece of evidence to support her motion for partial summary judgment. To bring such motion, Rule 56(c) mandates that the movant cite materials in the record, including declarations made on personal knowledge that set out admissible facts. Valdez, the movant, is also the plaintiff in this case, which gives her a particular standpoint:

> Where, as here, the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim.

*Hotel 71 Mezz Lender LLC v. Nat. Retirement Fund*, 778 F.3d 593, 601 (7th Cir. 2015).


ORIGINAL

This is the same approach to summary judgment motions adopted by the Guam Supreme Court. Non-movants must do more than rely on their pleadings; they "must offer some significant probative evidence supporting such allegations" as part of their initial burden to show that undisputed facts in the record support a prima facie entitlement to relief. *Hawaiian Rock Prods. Corp. v. Ocean Housing, Inc.*, 2016 Guam 4 ¶ 27; *Hemlani v. Hemlani*, 2015 Guam 16 ¶ 18; *Camacho v. Perez*, 2017 Guam 16 ¶ 13. In summary judgment motions, the court's analysis necessarily starts with whether the movant meets this initial burden. *Camacho*, 2017 Guam 16 ¶ 14; *see also Ukau*, 2016 Guam 16 ¶ 74 ("Fundamental to the consideration of a motion for summary judgment is consideration of the evidence.").

For these reasons, the Court may not reject and must consider Valdez's Declaration.

### 2. Valdez establishes the prima facie elements of assault.

Valdez's Declaration and the videos provide evidence of Pangilinan's intent to commit an assault. The videos demonstrate Pangilinan's intent to have a sexual relationship with Valdez and his knowledge that she did not consent. The Court finds that Pangilinan has met her initial burden in demonstrating that Pangilinan intended to cause an assault.

### 3. Pangilinan's response introduces a question of fact as to his capacity.

Pangelinan's agents suggest that his age and later-diagnosed mental incapacity affect the Court's finding of intent. However, as a principle, an "adult actor with a mental or emotional disability is not immune from tort liability." Restatement (Third) of Torts § 7(a).[3] The Restatement illustrates that a woman with dementia who believes she is Napoléon Bonaparte is

---

[3] Courts adopt this standard to ensure innocent victims do not bear the loss of a tort committed by another. *Id.* at Rep.'s Note (citing *Williams v. Kearbey*, 775 P.2d 670, 672 (Kan. Ct. App. 1989)).

ORIGINAL

not immune from attacking her nurse, whom she thinks is an agent of the Duke of Wellington. The question becomes whether the woman was capable of forming the requisite intent of committing an intentional tort. The Restatement's comment further emphasizes that intentional torts carry a subjective standard: "the question of whether an actor with a mental or emotional disability is capable of forming the requisite intent to commit an intentional tort is a question of fact informed by the individual's mental or emotional capacity." *Id.* cmt (b).

When it comes to Pangilinan's mental capacity, the undisputed evidence shows that although he was diagnosed with dementia after the events in question, one of his doctors observed Pangilinan's memory loss during the years of the events. The connection between Pangilinan's memory loss, his 2022 diagnoses, and his capacity in 2019 through 2022, is not made clear, and it is not certain that without expert testimony, such a connection could be clarified before a jury. Nonetheless, when the medical evidence is accepted as true, particularly, that Pangilinan had decreasing mental capacity for at least ten years prior to his diagnosis, which manifested in gradual memory loss, for summary judgment purposes, the Court must conclude that Pangilinan lacked the capacity to intend to assault Valdez. At the very least, Pangilinan's subjective intent, and the effect of his mental capacity on such intent, remains a question of fact.[4]

## III. CONCLUSION

When accepted as true, Pangilinan's agents' version of the facts surrounding Valdez's

---

[4] Valdez claims that no evidence at trial could contradict Valdez as to Pangilinan's intent because Pangilinan was not subject to a deposition and his agents admit there are no other witnesses. Valdez further argues that Pangilinan has not retained an expert to testify as to his dementia preceding 2022. Because the Court herein finds that Pangilinan's agents have presented an issue of fact, it is unnecessary for the Court to make trial evidentiary rulings at this stage.

ORIGINAL

assault and battery allegations indicates outstanding questions of fact concerning his capacity and

intent. Valdez's Motion for Partial Summary Judgment is therefore DENIED and her claims

shall proceed to trial.

      **SO ORDERED** this 3 November 2023.

**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

SERVICE VIA E-MAIL.
I acknowledge that an electronic
copy of the original was e-mailed to:

Date:_____Time:_1/3/22_

Joseph Bamba, Jr.

Appearing Attorneys:
Daniel Berman, Esq., Berman Law Firm, for Plaintiff, Tina T. Valdez
Jon Ramos, Esq., Cabot Mantanona LLP, for Defendant, Marciano V. Pangilinan

ORIGINAL